OPINION
{¶ 1} Defendant-appellant Abraham Goode ("Goode") brings this appeal from the judgment of the Court of Common Pleas of Allen County finding him guilty of two counts of trafficking in crack cocaine and one count of having a weapon while under disability. For the reasons discussed below, the assignment of error is overruled.
 {¶ 2} On November 16, 2006, Goode was indicted for two counts of trafficking in crack cocaine, fourth degree felonies in violation of R.C. 2925.03(A) (C)(4)(b), one count of having a weapon while under disability, a third degree felony in violation of R.C. 2913.(A)(3), and one count of possession of cocaine, a fifth degree felony in violation of R.C. 2925.11(A) (C)(4)(a). The indictment was amended on May 17, 2007, raising the two counts of trafficking in crack cocaine to third degree felonies in violation of 2925.03(A)(1) (C)(4)(c). On June 5 and 6, 2007, a jury trial was held. The jury returned guilty verdicts on the charges of trafficking in cocaine and having a weapon while under disability. The jury returned a not guilty verdict on the possession of cocaine charge. On July 16, 2007, the trial court sentenced Goode to an aggregate sentence of five years in prison for the convictions. Goode appeals from his conviction and raises one assignment of error. *Page 3 
 The removal of the African-American jurors by peremptory challenges violated the due process and equal protection rights of [Goode], resulting in the denial of a fair trial.
 {¶ 3} The sole assignment of error challenges the use of peremptory challenges by the State to remove African-American jurors. SeeBatson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.
 "A court adjudicates a Batson claim in three steps." State v. Murphy (2001), 91 Ohio St.3d 516, 528, 747 N.E.2d 765. First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge. Batson, supra at 96-98. However, the "explanation need not rise to the level justifying exercise of a challenge for cause." Id. at 97. Finally, the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination. Id. at 98. See, also, Purkett v. Elem (1995), 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834. A trial court's findings of no discriminatory intent will not be reversed on appeal unless clearly erroneous. State v. Hernandez (1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (following Hernandez v. New York (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395).
State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106,804 N.E.2d 433. "The ultimate question is whether the trial court's analysis of the contested peremptory strike was sufficient to preserve a constitutionally permissible jury-selection process." State v.Brown, 8th Dist. No. 84059, 2004-Ohio-6862, ¶ 21.
 {¶ 4} In this case, the State used all four of its peremptory challenges. Three of the four challenges used were used to strike prospective jurors who were *Page 4 
African-American. Goode argues that the State struck these potential jurors because of their status as African-American.
 {¶ 5} The first Batson challenge was raised concerning the dismissal of Prospective Juror Adams ("Adams"). During voir dire, Adams stated as follows.
 The Court: Do you want to share with us?
 [Adams]: Actually I just feel — well, I just really don't want no part in it.
 The Court: Okay. Why is that?
 [Adams]: I don't know. I'm just too nervous and it's scary, I guess.
 The Court: That's understandable to be nervous.
 [Adams]: Right.
 The Court: You're not used to this kind of thing. Some other people have expressed some concerns.
 [Adams]: This just isn't for me.
 The Court: Do you think you could be fair and impartial?
 [Adams]: Honestly? No, because — I mean, I just don't feel like I could do it. I don't want nothing to do with it.
 The Court: I don't mean to pick on you. Can you express the reasons why you just don't want to do it?
 [Adams]: I don't know. I have issues, I guess.
 * * * *Page 5 
 The Court: All right. Well again, I don't like to pry; but, I think it's fair that the parties involved should understand what some of those issues might be.
 [Adams]: I mean, just the things I'm going through.
 The Court: Okay. Personal things?
 [Adams]: Yea.
 The Court: Is it the nature of the case that presents a problem — the type of charges that are alleged?
 [Adams]: Not so much that because, I mean, — well, if you want an honest answer, I don't see nothing wrong with selling drugs if you need it. I never will; but, some people need to do it.
 The Court: Okay. That's an honest expression. But that goes along with what I said. If you were chosen as a juror in this case and if I gave you instructions that were contrary to your beliefs, if the law was contrary to the belief you just expressed, can you put aside your beliefs and follow the law?
 [Adams]: Yea.
 The Court: So, you understand what the laws are?
 [Adams]: I know the law. I understand the law.
 The Court: And you could put aside a personal belief and follow the law if you were on the jury?
 [Adams]: Hopefully.
 The Court: Okay. Well, what I'm going to do [Adams], you've told me that you could follow the law. You've expressed that you don't really want to be here. I'm sure other people probably don't really want to be here. But, do you understand how important it is that we have people who will serve on the jury? *Page 6 
 [Adams]: Right. I mean, I was just saying that I don't see nothing wrong with it. Some people do. I don't want to be, you know, the one that says not guilty and they say guilty, you know.
 The Court: Well, each person who serves on a jury has to make up their own mind.
 [Adams]: Right. Right.
 The Court: You're all entitled — I mean, that's why we have jurors and we don't have just one person.
 [Adams]: Right.
 The Court: So, it's after talking it over with other jurors. But, each juror has to make up their mind for themselves. Do you feel that if you disagreed with some other jurors, well, do you feel that that might-
 [Adams]: That's what I'm saying. I'm sure I'm probably going to disagree.
 The Court: You haven't even heard any facts yet.
 [Adams]: No. I mean, I haven't. But-
 The Court: You might all agree. Are you willing to serve if we need you? Let me ask it this way — do you think, honestly, do you think you can be fair and impartial and follow the instructions of the law by the Court?
 [Adams]: No.
 The Court: You don't think you could be fair and impartial?
 [Adams]: No.
Tr. 29-32. Goode's counsel objected to Adams' dismissal, so she was permitted to remain on the panel for the remainder of voir dire. During questioning by the *Page 7 
State, Adams stated that she was depressed and obtaining treatment for that condition. Id. at 51. When questioned by defense counsel, Adams stated that she could be fair and impartial. Id. at 71. The State did not attempt to have Adams dismissed for cause, but chose to use a peremptory challenge to dismiss Adams. The trial court determined that Goode had made a prima facie case for discriminatory purpose. The State then argued that Adams should be dismissed because she did not believe in the jury system, did not want to participate in the process, and did not believe there was anything wrong with selling drugs.
 {¶ 6} The trial court then proceeded to evaluate the arguments given the totality of the circumstances.
 Court: Okay. The Court finds, based upon the questions during voir dire and [Adams], her answers, her expressions of nervousness and, in fact, she even went one step further and went into detail with her psychological issues of depression and that she's a client with Lutheran, but also her very clear opinion that she doesn't see anything wrong with selling drugs, even though she indicated she could be fair and impartial and would follow instructions, but I find that her opinion that she doesn't see anything wrong with selling drugs is obviously race neutral. It doesn't matter what color her skin was, with that opinion. That's a race neutral opinion. Taking into consideration all of the other things that she talked about, her problems with being here, not wanting to be here, being overwhelmed or being nervous, and then, again, her depression that she spoke of, the Court's going to find those are race neutral, facially race neutral reasons stated.
Id. at 91. After reviewing the record, this court cannot state that the trial court's conclusion was clearly erroneous. Adams specifically stated that she did not see a *Page 8 
problem with selling drugs and waivered as to whether she could be fair and impartial.[1] Thus, the trial court did not err in overruling theBatson challenge in relation to Adams.
 {¶ 7} The second Batson challenge was raised concerning the peremptory challenge to Prospective Juror Dukes ("Dukes"). During voir dire, Dukes indicated that she could be fair and impartial. However, the following dialogue occurred between the State and Dukes.
 Miss Emerick: Is that a married name?
 [Dukes]: Yes.
 Miss Emerick: Can I ask your husband's first name?
 * * *
 Miss Emerick: That's a name that's familiar with me because I have prosecuted him a couple of times, at least. As I explained earlier when some of the other jurors were answering questions, I certainly don't mean to embarrass anybody or bring up something sensitive, but obviously that's something that I want to talk to you about. I know that a few years ago, and I don't think you were married then, he was in prison for some criminal stuff that was related to drugs. I think he just went back for another drug case; is that correct?
 [Dukes]: Yes. *Page 9 
 Miss Emerick: Now, some of the questions that were asked earlier had to do with knowing anybody that had been involved in the criminal justice system. Obviously you weren't up in the panel at that point and you didn't get a chance to respond.
 [Dukes]: Right.
 Miss Emerick: How does your husband's involvement and the fact that he's currently incarcerated for drugs and drug trafficking make you feel about being a juror on a drug case?
 [Dukes]: Well, I don't feel anything. I mean, what's fair is fair. What's you know, wrong is wrong and what's right is right.
 Miss Emerick: So you're saying that in this case you could judge the evidence, you feel, on this case alone and not have anything in relation to your husband's case impact that?
 [Dukes]: Right.
 Miss Emerick: Now, do you feel that [he] was rightfully or wrongfully convicted?
 [Dukes]: I think rightfully.
 Miss Emerick: You believe that the evidence was there against him? I don't think he went to trial; did he?
 [Dukes]: No.
 Miss Emerick: He entered a plea of guilty of some sort?
 [Dukes]: Yes.
 Miss Emerick: You and he have been together for awhile, I do believe?
 [Dukes]: Uh-huh. *Page 10 
 Miss Emerick: Okay. So you were together when he had his prior felony conviction as well?
 [Dukes]: Yes.
 Miss Emerick: Now, I can't remember on his prior case which law enforcement agency was involved in that. I do know on the much more recent one, and perhaps you didn't even know this, but it's the same drug unit that's involved here that investigated the case against your now husband. Any issues there in terms of listening to these officers testify and knowing that they're the same ones that investigated your husband and were indirectly — well, I mean, clearly they didn't send him to prison. It was your husband's own actions that put him in prison. But, any problem there?
 [Dukes]: No, because, like you said, I don't know any of the officers.
 Miss Emerick: Okay. I didn't know if you did or didn't. I just wanted to ask. Obviously it sounds like Judge has taken care of what was a potential work problem. Any other issues that have occurred to you other than the work scheduling?
 [Dukes]: No.
Id. at 99-101. After the State used a peremptory challenge for Dukes, Goode raised a Batson objection. The trial court determined that a prima facie case existed and asked the State for its reasons. The State claimed that it had personal knowledge that Dukes husband had been convicted of two felonies related to drugs, that Dukes herself was involved in one of the cases, that her home and car had been forfeited as a result of those charges, and that she was present when the *Page 11 
most recent search warrant was executed in the home. The trial court then viewed the reasons considering the totality of the circumstances and held as follows.
 The reason stated is the fact that, as [Dukes] admitted, her now husband has been convicted on previous occasions for drug related offenses. That, the Court finds, is race neutral.
 Given the nature of the case, which Batson says you have to look at, which is a drug case, it wouldn't matter what color skin [Dukes'] husband or [Dukes] was. The fact that the State has stated the reason is that her husband has been convicted of these types of offenses before is race neutral.
Id. at 106-07. Clearly, the prosecutor had personal knowledge of [Dukes] and some potential conflicts of interest the potential juror could have with the prosecutor herself as well as some of the witnesses. This evidence is sufficient to support the judgment of the trial court and the trial court did not err in overruling the Batson challenge as it applies to Dukes.
 {¶ 8} Finally, Goode claims the trial court erred in denying theBatson challenge to the dismissal of Potential Juror Logan ("Logan"). The questioning of Logan during voir dire was limited. The State questioned Logan concerning whether she could be impartial even though she had an uncle involved in the criminal justice system. The trial court found that a prima facie case had been made for theBatson challenge and asked the State for its reasons. The State noted that its reasons for dismissing Logan were similar to those used to dismiss a male Caucasian juror. *Page 12 
 In my notes I noted that in response to early questioning at various points I thought that they were both reticent in their answers. I noticed that [Logan] had indicated that she had an uncle involved in the criminal justice system. Again, while this is not a challenge for cause, and I'm not suggesting it rises to a challenge for cause, she indicated that was some time ago, but I thought similar to some of [the other challenged juror's] answers on related issues that I just was getting an impression that there was something, well, for some reason that they weren't wanting to participate, whether it was the body language or the lack of, well, just the instinctive lack of complete openness in response to some of the questions. I also noticed during the early part of the voir dire, more specifically during the Court's questioning and my own, that once [Logan] was up in the jury box that she almost appeared as if she were falling asleep. On several occasions her eyes were closed and she was leaned over in her chair. I don't know that she was actually sleeping; but, I thought that was another indication of, well, whether legitimately she's tired, or a complete lack of interest in the proceedings here, or any or all of those reasons. But that was something else I had down in my notes — that if enough peremptories were left that, well, for the same reasons I've just noted, I did not like some of her answers and I felt that there was a hesitation there. Some of that would not be apparent on the record. Some of it is, I think, more in hearing her speak that I thought she hesitated.
Id. at 135-36. Again the trial court found that Goode had made a prima facie case for the Batson challenge and considered the State's reasons given the totality of the circumstances. The trial court even determined that it did not believe there was reason to dismiss Logan for cause. Id. at 136. However, the trial court also noted that it had observed that Logan "has had her head in her hand and leaning for most of the voir dire process." Id. at 137. The trial court then concluded that these reasons were race neutral and overruled the Batson challenge. Although the *Page 13 
record concerning this challenge is not as clear cut as the others, this court must accept the undisputed evaluations of Logan's behavior given by both the State and trial court as fact. Like the trial court, this court does not see a challenge for cause here, but this is a peremptory challenge. A party can use a peremptory challenge for any reason as long as it is race neutral. Batson, supra. Here, the State did offer reasonable explanations that were race neutral. Thus, the trial court did not err in denying the Batson challenge.
 {¶ 9} Having found no abuse of discretion in the trial court's rulings, the assignment of error is overruled. The judgment of the Court of Common Pleas of Allen County is affirmed.
Judgment Affirmed.
SHAW, P.J., and ROGERS, J., concur.
[1] This court notes that the question of whether a juror can be fair and impartial usually determines whether a juror may be dismissed for cause and is not a necessary element for a peremptory challenge. However, the fact that the juror repeatedly changed her mind about whether she could be fair and impartial, even though her final answer was that she could, is certainly an issue that the State may consider in determining whether to use a peremptory challenge to dismiss said juror. *Page 1