OPINION *Page 2 
{¶ 1} Defendant-Appellant Michael Glenn ("Glenn") appeals from the January 30, 2006 Judgment Entry of Sentencing of the Court of Common Pleas, Allen County, Ohio, sentencing him to two terms of life imprisonment without parole on two counts of Aggravated Murder in violation of R.C. 2903.01(B), and ten years for one count of Aggravated Robbery in violation of R.C. 2911.01(A)(3). All three counts were ordered to be served consecutively.
 {¶ 2} Both Glenn and the State agree to the same recitation of the facts in their briefs, as follows:
 Michael Glenn confessed to killing his ex-girlfriend, Lanette McDonald, and her mother, Carmen Jean. T.p. 3-18; Exhibits 19-20. He was addicted to crack cocaine and went to McDonald's home to demand money. Id. He used a heavy stick to bludgeon the two to death. Id. He stole a few items from the home and took McDonald's car to Toledo, where he was arrested. Id. He confessed both in Toledo and in Lima. Id.
(Appellant's Brief at 2, Appellee's Brief at 3). We find these facts to be sufficient given the scope of the appeal. However, we note that these facts incorrectly state that Glenn had a relationship with McDonald when, in fact, it was Carmen Jean with whom he had the prior relationship. (Tr.p. 1314).
 {¶ 3} Glenn was indicted on April 19, 2005 on one count of Aggravated Robbery, in violation of R.C. 2911.01(A)(3), a felony of the first degree, two counts of Aggravated Murder, in violation of R.C. 2903.01(B), and two counts of Aggravated Murder, in violation of R.C. 2903.01(D). Each of the four counts of *Page 3 
Aggravated Murder contained three specifications stating that: 1) the Aggravated Murder was committed while Glenn was under detention (R.C. 2929.04(A)(4)); 2) the Aggravated Murder was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons (R.C. 2929.04(A)(5)); and 3) the Aggravated Murder was committed while Glenn was committing, attempting to commit, or fleeing immediately after committing or attempting to commit aggravated robbery and Glenn was the principal offender in the commission of the Aggravated Murder (R.C. 2929.04(A)(7)). The addition of these three specifications to each charge made these murders eligible to receive the death penalty. Glenn entered a plea of not guilty on all counts on May 4, 2005.
 {¶ 4} A jury trial commenced on January 10, 2006. On January 20, 2006, the jury returned a verdict of guilty on all counts. The jury also found Glenn guilty of all specifications contained in the indictment to the four counts of Aggravated Murder.
 {¶ 5} Prior to the penalty phase of trial, the court determined that counts two and four, each pertaining to the Aggravated Murder of Carmen Jean should merge for sentencing. The trial court also determined that counts three and five, each pertaining to the Aggravated Murder of Lanette McDonald should also merge for sentencing. The State was then required to elect a single count of Aggravated Murder for each victim on which to proceed to sentencing. The State elected to proceed on counts two and three, Aggravated Murder in violation of *Page 4 
R.C. 2903.01(B). The State also elected to proceed on only one specification to each count, in this case, that the Aggravated Murder was part of a course of conduct involving the purposeful killing of, or attempt to kill two or more persons, as specified in R.C. 2929.04(A)(5).
 {¶ 6} The penalty phase commenced on January 26, 2006, with the jury returning a sentence of life imprisonment without parole on both counts of Aggravated Murder. The trial court also sentenced Glenn to ten years in prison on the charge of Aggravated Robbery. The trial court determined that the life sentences should run consecutively to each other and that the ten year sentence for Aggravated Robbery should also run consecutive to the two life sentences.
 {¶ 7} Glenn now appeals asserting three assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED BY PERMITTING THE STATE TO DEMONSTRATE THAT MR. GLENN WAS UNDER POSTRELEASE CONTROL SUPERVISION WITHOUT PRODUCING A JUDGMENT ENTRY DEMONSTRATING THAT MR. GLENN WAS ON POSTRELEASE CONTROL. T.P. 1472, 1524-1525, 1528-1537; EVID. R. 1002, 1005; FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED BY PERMITTING THE STATE TO USE PEREMPTORY CHALLENGES TO STRIKE THE ONLY TWO REMAINING AFRICAN-AMERICAN JURORS. T.P. 708, 823-824, 1442-7; FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. *Page 5 
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED BY IMPOSING NON-MINIMUM, CONSECUTIVE PRISON SENTENCES. SENTENCING ENTRY, APX. AT A-1.
 First Assignment of Error {¶ 8} In his first assignment of error, Glenn argues that the trial court erred by permitting the State to demonstrate that Glenn was under postrelease control without producing a judgment entry demonstrating that a trial court had sentenced him to postrelease control. From Glenn's brief, it appears that he is actually arguing that the trial court failed to grant his Crim. R. 29 motion for acquittal with respect to the specification attached to all four counts of Aggravated Murder pursuant to R.C. 2929.04(A)(4).
 {¶ 9} Crim. R. 29(A) provides:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 {¶ 10} A trial court should not grant a Crim. R. 29 motion for acquittal if "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt * * *." State v. Bridgeman (1978), 55 Ohio St.2d 261,263, 381 N.E.2d 184. However, this Court has previously held that theBridgeman standard "must be viewed in light of the sufficiency of evidence test put forth in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus." State v. Foster (Sept. 17, 1997), *Page 6 
Seneca App. No. 13-97-09. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259
at paragraph two of the syllabus.
 {¶ 11} In the present case, the specification at issue is contained in R.C. 2929.04(A) and provides as follows:
 Imposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:
 * * *
 (4)The offense was committed while the offender was under detention or while the offender was at large after having broken detention. As used in division (A)(4) of this section, "detention" has the same meaning as in section 2921.01 of the Revised Code, except that detention does not include hospitalization, institutionalization, or confinement in a mental health facility or mental retardation and developmentally disabled facility unless at the time of the commission of the offense either of the following circumstances apply:
 (a) The offender was in the facility as a result of being charged with a violation of a section of the Revised Code.
 (b) The offender was under detention as a result of being convicted of or pleading guilty to a violation of a section of the Revised Code.
 {¶ 12} R.C. 2921.01 defines "detention" as
 arrest; confinement in any vehicle subsequent to an arrest; confinement in any public or private facility for custody of persons charged with or convicted of crime in this state or *Page 7 another state or under the laws of the United States or alleged or found to be a delinquent child or unruly child in this state or another state or under the laws of the United States; hospitalization, institutionalization, or confinement in any public or private facility that is ordered pursuant to or under the authority of section 2945.37, 2945.371, 2945.38, 2945.39, 2945.40, 2945.401, or 2945.402 of the Revised Code; confinement in any vehicle for transportation to or from any facility of any of those natures; detention for extradition or deportation; except as provided in this division, supervision by any employee of any facility of any of those natures that is incidental to hospitalization, institutionalization, or confinement in the facility but that occurs outside the facility; supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution; or confinement in any vehicle, airplane, or place while being returned from outside of this state into this state by a private person or entity pursuant to a contract entered into under division (E) of section 311.29 of the Revised Code or division (B) of section 5149.03 of the Revised Code. For a person confined in a county jail who participates in a county jail industry program pursuant to section 5147.30 of the Revised Code, "detention" includes time spent at an assigned work site and going to and from the work site.
 {¶ 13} With respect to proving that Glenn was under detention at the time he committed the murder, the State presented the testimony of Elizabeth Dunahay, an adult parole officer for the State of Ohio. Dunahay testified about her contact with Glenn as follows:
 Q. Okay. In your capacity as a probation officer with the A.P.A. did you have an opportunity to have one Michael P. Glenn as — well, did you have the opportunity to supervise him?
 A. Yes, sir, I did.
 Q. Would you tell us of the circumstances that led to you supervising him, please? *Page 8 
 A. Mr. Glenn was convicted in Allen County in the year 2000 for Robbery under Allen County docket number 2000 0222 and he was also convicted for Sexual Battery under Allen County 2000 0429. He was sentenced to the institution and then released on P.R.C. supervision for a period of three years.
 Q. When did that occur? When did you receive him, I guess is what I'm looking for.
 A. He was released to supervision on 6-1-04.
 Q. Okay. June 1st of 2004?
 A. Yes.
 Q. All right. Tell us what that means to be on supervision, or released on supervision?
 A. To be released on supervision means that he is under a P.R.C. sanction outlined by the Ohio Revised Code that he is subject to standard conditions of supervision. It's the same thing as parole or probation, other than parole, or P.R.C., he's under the Board's direction and the Ohio Revised Code and probation is under the Court. So, he was subject to the conditions of supervision and if he were to violate any of those conditions of supervision he would be returned to the institution pending a Court action.
 * * *
 Q. Okay. So, my question to you, again, based on what you just told me, was Michael P. Glenn under detention on April 19th and 20th of the year 2005?
 A. Yes, sir, he was.
(Tr.p. 1471-1473). *Page 9 
 {¶ 14} The testimony of Dunahay was the only evidence offered to prove that Glenn was under detention at the time he committed the murders. At the close of the State's case, Glenn made a Crim. R. 29 motion to dismiss this specification, arguing that the State needed to present some type of judgment entry to show that Glenn was actually on postrelease control. In response to this argument, the trial court held as follows:
 This has all come up, as pointed out by the State, in the context of a Motion for Acquittal under Criminal Rule 29. In such a case the Court has to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. I have to view the evidence in a light most favorable to the prosecution.
 * * *
 The Court would, first off, find construing the evidence most favorable to the State that there was evidence from Miss Dunahay that the defendant was on post-release control. The statutory definition of detention includes — and under her supervision. In fact, I believe there was a question `what did she mean when she said supervision'. So, even the word `supervision' was used. She was an employee of the Department of Rehabilitation and Corrections. She was supervising a person who was on any type of release from a State correctional institution.
 I would find the evidence construed most strongly in favor of the State shows that evidence was shown at least enough that reasonable minds could differ as to whether or not it's been proven beyond a reasonable doubt.
(Tr.p. 1534-1535). *Page 10 
 {¶ 15} Here, we agree with the trial court that after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[1]
 {¶ 16} Finally, we agree with the State's argument that any error that could have resulted from allowing this specification to go to the jury did not prejudice Glenn at sentencing. Prior to the penalty phase of trial, the court determined that counts two and four, each pertaining to the Aggravated Murder of Carmen Jean should merge for sentencing. The trial court also determined that counts three and five, each pertaining to the Aggravated Murder of Lanette McDonald should also merge for sentencing. The trial court then required the State to elect to a single count of Aggravated Murder for each victim on which to proceed to sentencing. The State elected to proceed on counts two and three, Aggravated Murder in violation of R.C. 2903.01(B). The State also elected to proceed on the specification that the Aggravated Murder was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons, as specified in R.C. 2929.04(A)(5).
 {¶ 17} Therefore, the fact that the murders were committed while Glenn was under detention was not an issue at the penalty phase of trial. Accordingly, *Page 11 
Glenn's first assignment of error is overruled.
 Second Assignment of Error {¶ 18} In his second assignment of error, Glenn argues that the trial court erred in permitting the State to use its peremptory challenges to strike the only two remaining African-American prospective jury members.
 {¶ 19} The United States Supreme Court has addressed this issue inBatson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.
 "A court adjudicates a Batson claim in three steps." State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 106, quoting State v. Murphy (2001), 91 Ohio St.3d 516, 528, 747 N.E.2d 765. "First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge. Batson, 476 U.S. at 96-98, 106 S.Ct. 1712, 90 L.Ed.2d 69." Id. Third, the trial court must decide, based on all the circumstances, whether the opponent has proved purposeful racial discrimination. Batson at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69. See also Purkett v. Elem (1995), 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834. A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous. State v. Hernandez (1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310, following Hernandez v. New York (1991), 500 U.S. 352, 368, 111 S.Ct. 1859, 114 L.Ed.2d 395.
 In step three, the trial court may not simply accept a proffered race-neutral reason at face value, but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual. "[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it." Miller-El v. Dretke (2005), 545 U.S. 231, 251-252, 125 S.Ct. 2317, 162 L.Ed.2d 196. If the trial court determines that the proffered reason is merely pretextual and that a racial motive is in fact *Page 12 behind the challenge, the juror may not be excluded. Id. at 252, 125 S.Ct. 2317, 162 L.Ed.2d 196.
State v. Frazier, 115 Ohio St.3d 139, 147-148, 873 N.E.2d 1263,2007-Ohio-5048. See also State v. Goode, 3rd Dist. No. 1-07-55, 2008-Ohio-1651.
 {¶ 20} "The ultimate question is whether the trial court's analysis of the contested peremptory strike was sufficient to preserve a constitutionally permissible jury-selection process." State v.Brown, 8th Dist. No. 84059, 2004-Ohio-6862, ¶ 21.
 {¶ 21} In the present case, the State used all six of its peremptory challenges. The fourth and fifth challenges were utilized to challenge prospective jurors who were African-American. Specifically, Glenn challenges the use of peremptory challenges to excuse prospective jurors numbered 55 and 59, as racially motivated.[2]
 {¶ 22} The State's fourth peremptory challenge was used to exclude Prospective Juror 55. At voir dire, Prospective Juror 55 stated that he had difficulty hearing. (Tr.p. 684). Moreover, Prospective Juror 55 stated that he was opposed to the death penalty.
 The Court: Okay. So, I need to ask you now, number fifty-five, are you religiously, morally, or otherwise against the imposition of the death penalty?
 Prospective Juror: Yes, sir. *Page 13 
 The Court: Okay. Now, even though you've indicated that you have a conscientious, religious, or other objection to the death penalty if you are selected as a juror in this case, number fifty-five, will you nevertheless, follow my instructions as Judge and fairly consider the imposition of the sentence of death if appropriate in this case? Your answer must be `yes' or `no'.
 Prospective Juror: Yes.
(Tr.p. 686).
 {¶ 23} Prospective Juror 55 was further questioned on his views on the death penalty.
 Mr. Waldick: When the Court asked you earlier today, or just a minute ago, you said you were against the death penalty.
 Prospective Juror: I'm against putting a man to death myself. I'm not against the State doing it.
 Mr. Waldick: Okay. Well, explain that. What do you mean by that?
 Prospective Juror: If I were to decide if somebody should go to the death, or, have the death penalty, well, I wouldn't want to make that decision.
(Tr.p. 688).
 {¶ 24} After voir dire of Prospective Juror 55, the State challenged him for cause stating that "he indicted that he has memory problems — he can't remember what was said five minutes ago." (Tr.p. 707). The trial court denied the State's challenge for cause. The State, however, subsequently used a peremptory challenge to remove Prospective Juror 55 from the jury. *Page 14 
 {¶ 25} Glenn then made a Batson challenge to Prospective Juror 55's dismissal. The trial court requested that the State provide a reason for challenging Prospective Juror 55. The State explained that:
 [I]t is our feeling that we challenged him on cause initially and we believe that as a result of the same reasons we listed at the time of cause we would incorporate our reasons for cause within our reasoning here now. That is, one, he has told us that he's against the death penalty. He also indicated that he had a bad memory — he couldn't remember what was said five minutes ago. Finally, he said not only was he morally, but he was also religiously against or opposed to the death penalty.
(Tr.p. 1244-1245).
 {¶ 26} The trial court proceeded to evaluate the arguments given the totality of the circumstances.
 As the Court reviews the number of racial group members in African-Americans that are on the venire panel, the nature of the crime, the race of the defendant, and the race of the alleged victims, the questions and statements during voir dire that the Court made note of, the Court would find that there is a facially race neutral reason given by the State. The Court understands and has applied the Batson test and would overrule the challenge at this time finding there has not been a pattern of strikes against African-Americans at this point.
(Tr.p. 1244).
 {¶ 27} After reviewing the record, this Court cannot state that the trial court's conclusion was clearly erroneous. Prospective Juror 55 stated that he had a moral and religious opposition to the death penalty, hearing trouble, and a poor memory. Thus, the trial court did not err in overruling the Batson challenge with respect to Prospective Juror 55. *Page 15 
 {¶ 28} The State used its fifth peremptory challenge to excuse Prospective Juror 59. At voir dire, Prospective Juror 59 stated that he was vaguely familiar with the victims. (Tr.p. 810). He also stated that he lived in the neighborhood where the murders occurred and had heard various rumors concerning the murders. (Id.).
 The Court: Are you, number fifty-nine, religiously, morally, or otherwise against the imposition of the death penalty?
 Prospective Juror: I am against it.
 The Court: Okay. I appreciate your answer. Even though you've indicated either a conscientious, religious, or other objection to the death penalty if you are selected as a juror in this case will you, nevertheless, follow my instructions as Judge and fairly consider the imposition of the sentence of death if appropriate in this case? You must answer that `yes' or `no'.
 Prospective Juror: I wouldn't.
 The Court: Okay. I don't want to dwell on this too much. I appreciate that. There's no right or wrong answer. Will your views on the death penalty prevent or substantially impair your ability as a juror to perform your duty in accordance with your oath and the Court's instructions?
 Prospective Juror: No.
(Tr.p. 812).
 {¶ 29} Prospective Juror 59 was further questioned by the State concerning his views on the death penalty. He offered the following explanation for why he was undecided concerning the death penalty:
 Yea. I mean, at the time I, you know — well, I filled it out. Then I started to thinking about it. I've been reading like the story of *Page 16 Stanley Tookie Williams, the Los Angeles co-founder of the Crips. I was sitting there and I was watching a movie of his life and I'm reading the book and he's telling like how things were when he was out there doing wrong. Since then I watched how he, you know, reformed himself. It seemed like, you know, just because he was, you know, the founder of the Crips they just didn't want to see him live. They wanted to set an example, you know. To me, that's how I felt. I just think it's a cold-blooded thing, I mean. Really, my religion, too. It's not for me to decide whether someone dies or not; you know? That's always been what my grandpa said. I've got good friends right now that's in church, you know. He always says that. When people tell you like, you know, you might be playing around and you say something funny and somebody goes `you're going to hell', he's like `don't say that, man, because it's not you determining if you're going to hell, or if you die, or not, or if somebody dies or not'. That's just the way I feel, you know.
(Tr.p. 814).
 {¶ 30} The State challenged Prospective Juror 59 for cause because "he answered three of the four questions in a way which would lead you to believe that he could under no circumstances impose, or, fairly consider the imposition of the death penalty. We believe him to be impaired, substantially impaired. His views on the death penalty substantially impair his ability to be a fair and impartial juror." (Tr.p. 822). The trial court overruled the State's challenge for cause. The State, however, used a peremptory challenge to remove Prospective Juror 59 from the jury.
 {¶ 31} Glenn then made a Batson challenge to Prospective Juror 59's dismissal. The trial court requested that the State provide a reason for challenging Prospective Juror 59. The State explained that: *Page 17 
 We would, again, incorporate the reasons we elicited, or we gave the Court on our challenge for cause initially, or, with the first time through with this particular juror. He indicated that he couldn't understand why Tookie Williams had to be executed. He didn't say it in those words, but that was the drift that I got in talking to him. For the record, Tookie Williams, frankly, in reviewing this later on, Tookie Williams was the founder of the CRIPS who had been convicted, apparently, of a quadruple homicide and I believe it was in California. He indicated that he was against the death penalty. He answered two of the Court's well, what I would call super charge Witherspoon/Witt questions in the affirmative. He was wishy-washy on unequivocally following the law. He indicated he lived in the neighborhood. He knew both the victims and he was familiar with some of the facts. He said he had heard all kinds of things. For those reasons we believe — well, those are our reasons for asking him to be excused.
(Tr.p. 1245-1246).
 {¶ 32} The trial court proceeded to evaluate the arguments given the totality of the circumstances.
 Well, as I understand Batson, the first part is that the defendant needs to make out a prima facie case of purposeful discrimination. Again, we look at the number of African-Americans who were on the final thirty-three, and I believe that's two. This is the second of those two to be struck by the State. Given the nature of the crime, the race of the defendant and that of at least one of the victims all being African-American, this is the second strike of members of the African American race that are on the jury. I also have to look at the questions and the responses given during voir dire. Again, as with all the jurors, the Court has kept notes. The Court doesn't find that the defense has made out a prima facie case of purposeful discrimination. But, even if they did and the burden shifts to the State, I find that the State has offered a race neutral reason for the strike. The reason that it's race neutral is, again, as indicated, number fifty-nine did voice some opposition to the death penalty. He had an inclination not to, or, did express some sympathy with Tookie Williams case, which is a race *Page 18 neutral reason to strike him. Also, he did live in the same area and neighborhood where the crime was committed. So, that's the reason the Court finds it to be facially race neutral. Again, I would find that there has not been a purposeful discrimination, or at least a showing of that, by the State. So for those reasons the Court will overrule the Batson objection.
(Tr.p. 1246-1247).
 {¶ 33} After reviewing the record, this Court cannot find that the trial court's conclusion was clearly erroneous. Prospective Juror 59 stated that he had a moral and religious opposition to the death penalty, as well as prior familiarity with the case due to knowing the victims and living in the neighborhood where the murders occurred. Thus, the trial court did not err in overruling the Batson challenge with respect to Prospective Juror 59.
 {¶ 34} This Court finds no error in the trial court's adjudication of Glenn's Batson challenges. Accordingly, Glenn's second assignment of error is overruled.
 Third Assignment of Error {¶ 35} In his third assignment of error, Glenn argues that the trial court erred in imposing non-minimum, consecutive prison terms for his conviction of two counts of Aggravated Murder and one count of Aggravated Burglary.
 {¶ 36} In reviewing sentencing decisions of a trial court, an appellate court conducts a meaningful review of the sentence decision.State v. Carter, 11th Dist. No. 2003-P-0007,2004-Ohio-1181. "Meaningful review" means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and *Page 19 
convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law. Carter, at ¶ 44 citingState v. Comer (2003), 99 Ohio St.3d 463, 476, 793 N.E.2d 473,2003-Ohio-4165; R.C. 2953.08.
 {¶ 37} Additionally, a court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing which are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11(A). To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. Id.
 {¶ 38} The Supreme Court of Ohio recently addressed constitutional issues concerning felony sentencing in State v. Foster,109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856. In Foster, the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework were unconstitutional and void, including R.C. 2929.14(B) requiring judicial findings that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender. Foster, 2006-Ohio-856 at ¶ 97, 103. Regarding new sentences and re-sentences, the Supreme Court of Ohio stated, "we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum *Page 20 
sentences." Foster, 2006-Ohio-856 at ¶ 100; see also State v.Mathis (2006), 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855
at paragraph three of the syllabus, ¶ 37.
 {¶ 39} However, a trial court must still consider the overall purposes of sentencing as set forth in R.C. 2929.11, as well as the factors relating to the seriousness of the offense and recidivism of the offender under R.C. 2929.12, when sentencing an offender. State v.Smith, 3rd Dist. No. 2-06-37, 2007-Ohio-3129 at ¶ 26
citing Mathis, 2006-Ohio-855 at ¶ 38. But, under R.C. 2929.12, a sentencing court is not required to use specific language regarding its consideration of the seriousness and recidivism factors. Id. citingState v. Sharp 10th Dist. No. 05AP-809, 2006-Ohio-3448;State v. Amett (2000), 88 Ohio St.3d 208, 205, 724 N.E.2d 793,2000-Ohio-302; State v. McAdams, 162 Ohio App.3d 318, 833 N.E.2d 373,2005-Ohio-3895; and State v. Patterson 8th Dist. No. 84803, 2005-Ohio-2003. Further, there is no requirement in R.C. 2929.12
that the trial court state on the record that it has considered the statutory criteria or even discussed them. Id. citing State v.Polick (1995), 101 Ohio App.3d 428, 431, 655 N.E.2d 820; State v.Gant, 7th Dist. No. 04-MA-252, 2006-Ohio-1469 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings); State v. Hughes
6th Dist. No. WD-05-024, 2005-Ohio-6405. *Page 21 
 {¶ 40} In the present case, the trial court conducted Glenn's sentencing hearing pursuant to R.C. 2929.19, which provides, in relevant part, as follows:
 (A)(1) The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony . . . At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative . . . and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case. The court shall inform the offender of the . . . finding of the court and ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender.
 * * *
 (B)(1) At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the pre-sentence investigation report. . .
 {¶ 41} A review of the record in the present case demonstrates that the trial court followed the procedures set forth in R.C. 2929.19 and considered both R.C. 2929.11 and R.C. 2929.12 in sentencing Glenn. Furthermore, we find that Glenn's sentence was supported by the record.
 {¶ 42} Specifically, we note that at Glenn's sentencing hearing, the trial court first briefly noted the jury's sentence for the two counts of Aggravated Murder, stating as follows:
 A sentencing hearing was held on January 25th and after the presentation of the evidence and closing arguments of the parties the jury retired and rendered its verdict at approximately nine-forty P.M. on the 25th. The jury returned unanimous verdicts that the defendant, Michael P. Glenn, be sentenced to life imprisonment without parole on Count Two *Page 22 and life imprisonment without parole on Count Three. The jury was polled by the Court and then discharged.
(Tr.p. Sentencing 8).
 {¶ 43} The trial court then considered the Aggravated Robbery charge.
 The victims of the offense suffered, obviously, the most serious physical harm as a result of the offense. Also another serious factor that the Court finds under paragraph (B) is that the defendant's relationship with the victims facilitated the offense.
 * * *
 There are recidivism factors in this case. They all show that recidivism is more likely than not. At the time of committing the offense in Count One the defendant was under post-release control. The defendant has a previous record as a juvenile and as an adult, including a previous felony record. The Court finds the defendant has not been rehabilitated to a satisfactory degree after previously being adjudicated or being convicted as an adult. He has not responded favorably to sanctions previously imposed. The Court will also find another factor that shows recidivism more likely is obvious from the evidence that the defendant has a pattern of substance abuse that's related to the offense.
(Tr.p. Sentencing 8-9).
 {¶ 44} Additionally, we note that the trial court also stated in its January 30, 2006 Judgment Entry that it had "considered the record, oral statements, the purposes and principles of sentencing under Ohio Revised Code § 2929.11, the seriousness and recidivism factors relevant to the offense and offender pursuant to Ohio Revised Code 2929.12, and the need for deterrence, incapacitation, rehabilitation and restitution." *Page 23 
 {¶ 45} Thus, although the trial court was not required to set forth its specific findings, nor was it required to specifically state that it considered each of the subsections of R.C. 2929.11, R.C. 2929.12, or R.C. 2929.13 pursuant to Foster, and Smith, supra, even though decided prior to Foster, the record clearly evinces that the trial court considered the requisite factors of R.C. 2929.12 in imposing Glenn's prison term. Therefore, we cannot clearly and convincingly find that the record does not support Glenn's sentence or that the sentence is otherwise contrary to law.[3]
 {¶ 46} We also note that Glenn was convicted of two counts of Aggravated Murder, and one count of Aggravated Robbery.
 {¶ 47} Pursuant to R.C. 2929.03(A),
 If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose sentence on the offender as follows:
 * * *
 (2)(a) If the indictment or count in the indictment contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code and if the offender is found guilty of both the charge and one or more of *Page 24 the specifications, the penalty to be imposed on the offender shall be one of the following:
 (i) Except as provided in division (C)(2)(a)(ii) or (iii) of this section, the penalty to be imposed on the offender shall be death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.
 Pursuant to R.C. 2929.14(A),
 . . . [i]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
 * * *
 (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.
 {¶ 48} Accordingly, we note that Glenn originally faced a maximum sentence of death for his convictions for Aggravated Murder, and a maximum sentence of ten years for his conviction of Aggravated Robbery. In this case, Glenn was ultimately sentenced to life without parole for his two convictions of Aggravated Murder and ten years for his conviction of Aggravated Robbery. An Aggravated Robbery, which involves the death of two victims, is perhaps the most serious form of the offense. Accordingly, we find that the record supports Glenn's sentence.
 {¶ 49} Finally, note that in the present case, Glenn was sentenced on January 30, 2006, before the Ohio Supreme Court's decision inFoster. The Ohio *Page 25 
Supreme Court recently considered a similar situation in State v.Payne, 114 Ohio St.3d 502, 873 N.E.2d 306, 2007-Ohio-4642 and State v.Davis, 116 Ohio St.3d 404, 880 N.E.2d 31, 2008-Ohio-2.
 {¶ 50} The Payne Court held that "a lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement of Blakely."[4]Payne, 2007-Ohio-4642 at ¶ 31. In applying Payne, the Davis Court reasoned that
 Davis's failure to challenge his consecutive sentences as a constitutional violation provided the trial court with no basis to make a proper ruling. See State v. Awan (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus (the failure to raise the constitutionality of a statute or its application at the trial court level, when the issue is apparent at the time of trial, constitutes a waiver of the issue). Thus, as in Payne, we hold that counsel's failure to "timely assert his rights under Blakely" has forfeited this issue. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23.
 A forfeited claim will still be considered under plain-error analysis. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 24. However, the test for plain error is stringent. A party claiming plain error must show that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the trial. See State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240; Crim. R. 52(B). Moreover, the burden of demonstrating plain error is on the party asserting it. See, e.g., State v. Jester (1987), 32 Ohio St.3d 147, 150, 512 N.E.2d 962. *Page 26 
 {¶ 51} Glenn did not object to his sentence at the time it was imposed. Thus, Glenn's failure to object to the imposition of the maximum sentence for his conviction of Aggravated Robbery has forfeited his claim on appeal. Moreover, no plain error occurred. Nothing in the record suggests that Glenn's sentencing would have been more lenient if he had been sentenced in accordance with Blakely and Foster. Indeed, "[s]ince Foster, trial courts no longer must navigate a series of criteria that dictate the sentence and ignore judicial discretion."Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, at ¶ 25. Accordingly, Glenn has failed to establish that he was prejudiced by the judicial fact-finding requirements.
 {¶ 52} Finally, we note that, although not specifically raised as an assignment of error, Glenn eludes to the argument, in his reply brief, that his trial counsel was ineffective for not objecting to his sentence. Although not properly raised, we elect to briefly address this argument.
 {¶ 53} The Supreme Court of Ohio has adopted a two-part test for determining claims of ineffective assistance of counsel in criminal prosecutions. See State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, at paragraph two of the syllabus, (following Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674).
 {¶ 54} Under this test, "[Appellant] must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional *Page 27 
errors, the result of the proceeding would have been different.'"State v. Jones, 3rd Dist. No. 02-2000-07, 2000-Ohio-1879 quotingStrickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. The second prong, regarding reasonable probability, requires a probability sufficient to undermine the confidence in the outcome of the trial. Id.
 {¶ 55} As we found no error in the trial court's imposition of Glenn's sentence, we cannot find that counsel was ineffective for failing to object to that sentence. Accordingly, Glenn's third assignment of error is overruled.
 {¶ 56} Based on the foregoing, the January 30, 2006 Judgment Entry of Sentencing of the Court of Common Pleas, Allen County, Ohio is affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] It is not clear what "judgment entry" Glenn would require the State to provide. Typically, a judgment entry of sentence merely provides the time period a defendant can be placed on post release control but does not specifically place a defendant on parole, or post release control. Rather, it is the Department of Corrections in conjunction with the Adult Parole Authority, which establish and maintain a defendant's status as being on post release control at any given time.
[2] We note that the trial court opted not to identify jurors by their names, but instead assigned each prospective juror a number, in order to safeguard their confidentiality. Therefore, this Court refers to the dismissed jurors by number only.
[3] We note that the Ohio Supreme Court has accepted jurisdiction to review State v. Kalish, 11th Dist. No. 2006-L-093,2007-Ohio-3850. In Kalish, the Ohio Supreme Court will likely address a conflict existing among the appellate courts in Ohio concerning the appropriate standard of review when a court reviews a sentence. This Court utilizes the clear and convincing standard of review; although some courts review a sentence for an abuse of discretion. Regardless, in the present case James' argument would fail under either standard as we do not find that the trial court committed an abuse of discretion when it sentenced James.
[4] "On June 24, 2004, * * * the Supreme Court decided Blakely v.Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.Blakely held that the Sixth Amendment prohibits a judge from imposing a sentence greater than that allowed by a jury verdict or by the defendant's admissions at a plea hearing. Id. at 305-306,124 S.Ct. 2531, 159 L.Ed.2d 403." Davis, 2008-Ohio-2 at ¶ 373. *Page 1