OPINION
{¶ 1} The defendant-appellant, Felipe Alvarado, appeals the judgment of the Putnam County Common Pleas Court convicting him of rape following a jury trial and sentencing him to life in prison without the possibility of parole. On appeal, Alvarado argues that the trial court erred by finding the minor victim competent to testify; that the trial court erred by allowing inadmissible hearsay; that the verdict was not supported by the sufficiency of the evidence or the manifest weight of the evidence; that he was denied the effective assistance of trial counsel; and that the trial court erred by sentencing him to the maximum sentence. For the reasons set forth herein, we affirm the judgment of the trial court.
 {¶ 2} On February 5, 2007, the Putnam County Grand Jury indicted Alvarado on two counts of rape, violations of R.C. 2907.02(A)(1)(b) and (A)(2), first-degree felonies. The first count contained four specifications: that the victim was less than ten years of age at the time of the offense; that Alvarado used force or the threat of force; that Alvarado caused serious physical harm; and that Alvarado was a sexually violent predator. The second count contained three specifications: that the victim was less than ten years of age at the time of the offense; that Alvarado used force or the threat of force; and that Alvarado was a sexually violent offender. Alvarado pled not guilty at arraignment. *Page 3 
 {¶ 3} On March 21, 2007, the state filed a motion to determine whether the minor victim, R.R., was competent to testify at trial. The trial court attempted to conduct a competency hearing on May 3, 2007, but the victim, R.R., was too distracted and the hearing was continued until May 22, 2007, at which time the judge did question R.R. The hearing was continued again until June 27, 2007. On July 30, 2007, the court filed a judgment entry finding R.R. competent to testify. Trial was held from September 17 through September 19, 2007, and the jury found Alvarado guilty on one count of rape and determined that R.R. was less than ten years of age at the time of the offense; that Alvarado did compel R.R. by force or threat of force; and that Alvarado did cause serious physical harm.
 {¶ 4} The following facts were revealed at trial. In January 2007, Alvarado lived with his fiancée, Christina, and four minor children, including the victim, R.R.[1] From approximately the middle of December through January 12, 2007, Christina was a patient at a hospital in Toledo, Ohio due to complications with her pregnancy. On the night of January 11, 2007, Alvarado returned home after visiting Christina and had sole custody of the children. Alvarado had the children take their showers, and allowed them to watch television while the girls' hair was drying. At some time between 8:00 and 8:30 p.m., he sent the children to bed. The two girls shared a bedroom, and the two boys shared a separate *Page 4 
bedroom, where R.R. slept in the top bunk. Alvarado later went into the boys' room and told R.R. to go into the master bedroom where Alvarado anally raped him. He then sent R.R. back to his own bed.
 {¶ 5} The next day, R.R. went to school, where his teacher immediately noticed that he was having trouble sitting in his chair. R.R. told the teacher that his "dad" had put his "P" all the way in his "butt." Later that day, R.R. told police and a representative from Children's Services the same story, and he continued to experience difficulty sitting down. After meeting with R.R., Detective Martin Schwiebert, from the Putnam County Sheriffs Office, went to Alvarado's home. Alvarado allowed Schwiebert to search the house, take photographs, and seize evidence. Alvarado later met Schwiebert at the sheriff's office, where his interview was videotaped.
 {¶ 6} In the meantime, Christina had been notified about the allegations. Since she was in Toledo, she refused to allow Children's Services to seek medical care for R.R. The following day, January 13, 2007, Christina took R.R. to Lima Memorial Hospital, where a sexual assault nurse examiner, Pamela Inbody, attempted to examine R.R. The child would not relax his sphincter muscle, so Inbody was unable to complete the exam. In particular, she was unable to complete a visual inspection and was unable to finish taking photographs with a colposcope. Christina took R.R. back to the hospital on January 16, 2007 for a *Page 5 
follow-up exam. At that time, R.R. was examined by Inbody and Dr. Randall Schlievert, and photographs of R.R.'s anus were taken. The pictures revealed a deep perianal laceration caused by blunt force trauma that occurred within 48 hours of R.R.'s prior exam on January 13.
 {¶ 7} On November 1, 2007, the trial court filed its judgment entry sentencing Alvarado to life in prison without the possibility of parole. Alvarado appeals the judgment of the trial court, asserting five assignments of error for our review.
 First Assignment of Error The trial court erred when it found the alleged victim, R.R., was competent to testify in violation of Alvarado's rights to due process and a fair trial pursuant to Evid. R. 601(A), the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.
 Second Assignment of Error The trial court erred in permitting the introduction of inadmissible hearsay in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.
 Third Assignment of Error The trial court violated Alvarado's right to due process under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution when it upheld the jury verdict as it was not supported by the sufficiency of the evidence and was against the manifest weight of the evidence. *Page 6 
 Fourth Assignment of Error Alvarado was denied his constitutional right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.
 Fifth Assignment of Error The trial court failed to consider the sentencing statutes in R.C. § 2929.11 — 2929.14 and abused its discretion in sentencing Alvarado to the maximum sentence.
 Minor Victim's Competency to Testify at Trial {¶ 8} To support his first assignment of error, Alvarado contends R.R. was an incompetent witness because his testimony was inconsistent. Alvarado claims that R.R. was "unable to talk about the difference between the truth or a lie, the consequences of telling a lie, and there was not enough consistent testimony sufficient to demonstrate his ability to receive facts and events, to recall them, or to communicate them." Alvarado argues that the trial judge failed to ask whether the victim understood the difference between pretend and real events, and he failed to sufficiently explore the child's ability to place facts in sequential order. In response, the state contends the trial court did not abuse its discretion by finding R.R. competent to testify, and even if the trial court did err, it was harmless given the weight of the evidence. *Page 7 
 {¶ 9} Relevant to this case, Evid. R. 601(A) presumes that all witnesses are competent except children under the age of ten. In determining whether a child under the age of ten years is competent to testify, the trial court must consider:
 (1) the child's ability to receive accurate impressions of fact or observe acts about which she will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what was observed; (4) the child's understanding of truth and falsity; and (5) the child's appreciation of her responsibility to be truthful.
State v. Frazier (1991), 61 Ohio St.3d 247, 251, 574 N.E.2d 483, certiori denied (1992), 503 U.S. 941, 112 S.Ct. 1488, 117 L.Ed.2d 629. A trial court's competency determination will not be disturbed absent an abuse of discretion. In re: Danylchuk, 3d Dist. No. 15-05-06,2005-Ohio-5042, at ¶ 5, citing Frazier, at 251, State v. Clark (1994),71 Ohio St.3d 466, 469-470, 644 N.E.2d 331, citations omitted. An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144, internal citations omitted.
 {¶ 10} At the first hearing, held on May 3, 2007, R.R. had trouble answering the questions posed by the judge. Based on R.R.'s answers to the judge's questions, the court and counsel agreed to a continuance since it was the first time R.R. had seen both his mother and Alvarado in approximately five *Page 8 
months. Despite the defendant's agreement that the hearing be continued, much of his appellate brief is devoted to the inconsistencies in R.R.'s testimony during the first hearing. Apparently, the trial court, being in the better position to see the child and assess his demeanor, placed little weight on the testimony adduced during the first hearing.State v. DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.
 {¶ 11} At the second and third hearings, R.R. was unable to define "truth" and "lying," and he told the court those were hard questions. However, R.R. knew that telling the truth was good, telling a lie was bad, and that he would be punished if he told a lie. R.R. told the court which schools he had attended at the second hearing, but provided a different answer at the third hearing. Alvarado stresses R.R.'s testimony that his biological father told him what to say. However, that argument isolates one response and ignores the rest of the testimony, from which a different response is apparent. The overall context of R.R.'s statements was that his father told him that he was to tell the judge the details about the rape, and that he was to tell the truth. R.R.'s explanations of the conversation indicate that his father was trying to help R.R. distinguish between the truth and a lie and to give examples.
 {¶ 12} Alvarado also claims that the child could not recall where his mother was on the night of the rape, which shows that R.R. was unable to explain the *Page 9 
sequence of events. However, R.R. knew that his mother was not home. The ability of an eight-year old child to explain his mother's whereabouts has no effect on the "sequence of events" in this case.
 {¶ 13} Many of Alvarado's other arguments are an attempt to turn the competency hearing into a "mini-trial" in order to impeach the child. As this Court has previously stated, "the questioning of the child should proceed in an orderly and simplistic manner." State v. Walsh (Nov. 13, 1997), 3d Dist. No. 14-97-20. As in Walsh, many of the court's questions to R.R. were compound questions and confusing. The questions below are illustrative of the type of questions R.R. was asked.
 Q: Well, then, maybe you didn't understand my question. Has anybody ever told you to tell a lie about Felipe about what happened that night, about his putting his "P" up your butt, has anybody told you to make up stuff about that? Do you understand my question?
 * * *
 Q: What did he tell you? [R.R.], you just told me that your dad told you to make up some things about Felipe, what did your dad tell you to make up about Felipe? Do you understand my question, [R.R.]? What don't you understand about it? Do you not understand it or do you just not want to answer it?
 * * *
 Q: And did your dad tell you to make this up and to tell a lie? And I'm not — Do you understand my question, [R.R.]? You said that your dad has talked with you about saying some things. What I want to know is did it really happen that Felipe put his *Page 10 "P" up your butt or did your dad tell you that that's what you should say, and you need to tell me only the truth?
Apparently, R.R. was trying to answer questions to the best of his ability, and his recitation of the basic facts was consistent over the course of several hearings. Inconsistencies about who he talked to first, second, or third are not the focus of a competency hearing. R.R. knew who he talked to about the rape. The "problems" pointed out by Alvarado are outside the scope of Frazier and test R.R.'s credibility, rather than his competency regarding the surrounding events. On this record, we cannot hold that the trial court abused its discretion when it determined R.R. was competent to testify at trial. The first assignment of error is overruled.
 Hearsay {¶ 14} In the second assignment of error, Alvarado contends that the trial court allowed inadmissible hearsay at trial. Specifically, Alvarado challenges statements R.R. made to Detective Marvin Schweibert and Pamela Inbody. He also challenges a hearsay statement made by Dr. Randal Schlievert as to what Inbody said. In response, the state argues that R.R.'s statements to Inbody were for a medical diagnosis, and are therefore admissible under Evid. R. 803(4), and his statements to Schweibert are not hearsay under Evid. R. 801(D)(1)(b).
 {¶ 15} A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. State v.McCullough, 3d Dist. No. 12-07-09, 2008-Ohio-3055, at ¶ 25, citingDeskins v. Cunningham, 3d Dist. No. 14-05-29, *Page 11 2006-Ohio-2003, at ¶ 53, citing Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 482 N.E.2d 1248. "`Hearsay'" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). The rule also provides that some statements are not hearsay. Pertinent to this case, Evid. R. 801(D)(1)(b) states:
 A statement is not hearsay if:
 * * *
 [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive[.]
 {¶ 16} During the state's case in chief, Schwiebert testified that he and R.R. had a discussion, and he began to state what R.R. told him. Defense counsel objected, and after a sidebar, the trial court allowed the testimony pursuant to Evid. R. 801(D)(1)(b). R.R. had already testified and was subjected to cross-examination. Schwiebert's testimony at trial showed that R.R.'s statement to him was consistent with the child's prior trial testimony. Furthermore, Schwiebert's testimony was offered to "rebut an express or implied charge of recent fabrication or improper influence or motive." *Page 12 
 {¶ 17} During opening statements, defense counsel told the jury in pertinent part:
 I'm going to present to you * * * [R.R.'s] step-sister, [I.A.] — not really his step sister, but this would be the eight-year-old girl who is Felipe's daughter that lived in the same household. She will tell you some interesting things, especially about that morning and when they went to school, about how [R.R.] fell down when he was at recess, about how he didn't walk funny until that happened. About some interplay between [R.R.] and an aunt of Felipe's girlfriend, Christina, who talks to [R.R.] all the time.
 * * *
 We will tell you that * * * the boy's natural father, while he has not had any contact with him in a significant period of time up to the time all these events occurred, wanted to go live with his father. He kept asking his mother, why can't you and I just live together like we used to. He wanted to get away from Felipe.
(Trial Tr., Jan. 11, 2008, at 208-209; 211). Defense counsel also mentioned "some interesting results" from a doctor in Tiffin who had examined R.R. All of these statements were setting up Alvarado's defense, which was essentially four-fold. First, he claimed that R.R. was lactose intolerant, which resulted in constipation and hard stools, causing the child pain. Second, he claimed that R.R. fell on his buttocks during recess on January 12, 2007 and injured himself. Third, he claimed that R.R.'s anus was sore because the family had run out of toilet paper and had been using paper towels to clean themselves in the restroom, and finally, he claimed that R.R. had fabricated the allegations so he could live with his biological father. Although none of these theories were expressly mentioned *Page 13 
during opening statement, they were certainly implied, and this Court has previously held that such implications during opening statements are sufficient to allow the state's use of Evid. R. 801(D)(1)(b).McCullough, at ¶ 26, quoting State v. Abdussatar, 8th Dist. No. 86406,2006-Ohio-803, at ¶ 15, citing State v. Johnson (April 26, 1996), 2d Dist. No. 15253; State v. Hoskins (June 28, 1995), 2d Dist. No. 94-CA-42 ("attacking a victim's credibility during opening statement has been found to constitute grounds for permitting a prior consistent statement into evidence pursuant to Evid. R. 801(D)(1)(b)."). In light of defense counsel's opening statement, R.R.'s statements to Schwiebert were not hearsay, and the trial court did not abuse its discretion when it allowed Schwiebert to testify about those statements.
 {¶ 18} As to the statements made by Inbody and Schlievert, defense counsel did not object during trial, and therefore, we must review the record for plain error. State v. Tibbetts, 92 Ohio St.3d 146, 157,2001-Ohio-132, 749 N.E.2d 226, citing State v. Johnson,88 Ohio St.3d 95, 111, 2000-Ohio-276, 723 N.E.2d 1054. Under Crim. R. 52(B), plain error does not exist unless the defect in the trial court was obvious and affected the defendant's substantial rights. State v. Chaney, 3d Dist. No. 13-07-30, 2008-Ohio-3507, at ¶ 39, citing State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "Plain error is to be used `with the utmost caution, under exceptional circumstances and only to prevent a manifest *Page 14 
miscarriage of justice.'" Id., quoting Barnes at 27. "Plain error exists only in the event that it can be said that `but for the error, the outcome of the trial would clearly have been otherwise.'" Id., quotingState v. Biros, 78 Ohio St.3d 426, 431, 1997-Ohio-204, 678 N.E.2d 891;State v. Johnson, 3d Dist. No. 2-98-39, 1999-Ohio-825.
 {¶ 19} Prior to Schlievert's testimony, Inbody had told the jury about her inability to fully examine R.R. on January 13 because he was in pain on that date. (Trial Tr., at 228; 259). She had also told the jury that she was able to use a colposcope to get additional pictures of R.R.'s anus on January 16. (Id. at 257). Schlievert testified that R.R. had suffered a perianal laceration, which is caused by penetration. (Id. at 276; 279; 312). Although Schlievert only examined R.R. on January 16, he had reviewed Inbody's report from January 13 and knew that Inbody had been unable to complete the examination of R.R.'s anus because he was in too much pain to relax his sphincter muscle. Schlievert also testified that the perianal laceration occurred within 48 hours prior to January 13. (Id. at 295; 299). In his brief, Alvarado claims the following statement by Schlievert was error: "Speaking of [Inbody], since she had seen him both times, it was her impression that the pain level was reduced as well." (Id. at 275:9-11). Even if the trial court erred by allowing Schlievert's testimony, we cannot find plain error. *Page 15 
Since Inbody had already testified similarly, we cannot find that the outcome of the trial would have been different without Schlievert's isolated statement.
 {¶ 20} Alvarado also assigns as error, the following testimony by Inbody.
 Q: Okay. And did you ask him for any further explanation, or did you begin an examination at that point?
 A: No, I just asked him, I said, well, why is your butt sore? And he just said that his butt hurt and he said, but I'm not supposed to tell anybody.
 Q: Okay. And at that point was there any more conversation or did you begin an examination?
 A: No, then I just continued on and asked him why his butt hurt, and he kind of more or less told me that he had been home, his mom was in the hospital, and he was home with his dad. And then I believe the uncle kind of interrupted and said that he calls mom's boyfriend dad, and explained that his biological, it wasn't his biological dad that he was talking about, but that it was mom's live-in boyfriend.
 * * *
 Q: Okay. And then did [R.R.] continue?
 A: Then he just, you know, I said, why does your butt hurt, and then he just proceeded to tell me that they had been watching TV, and that his dad had told him that they needed to shut the TV off and go to bed. And then he kind of said his sisters went to bed, and then he kind of just wasn't real sure what had happened. And he said that his dad came into the bedroom and told him to wake up, but to be quiet. So he said his dad told him to wake up and go into mom and dad's bed.
 * * * *Page 16 
 Q: And when you were also swabbing the anus, did he make any other statements regarding the Defendant?
 A: After I had finished with the photos, then we go ahead and swab the penis and then we swab the anus, and it was during the swabbing of the anus — we do culture swabs for the, that go in the sexual assault kit for DNA, but then we also did some testing for sexually transmitted diseases. And it was swabbing him for the sexually transmitted diseases, that's when he told me that that's where dad had put his pee and that he had put it all the way in.
(Id. at 221:8-25; 222:1-3, 6-20; 228:21-25; 229:1-8).
 {¶ 21} Anticipating that the state would use Evid. R. 803(4) and claim that R.R.'s statements to Inbody were necessary for a medical diagnosis or treatment, Alvarado has cited State v. Butcher, 170 Ohio App.3d 52,2007-Ohio-118, 866 N.E.2d 13, in which the Eleventh Appellate District held that the medical exception is inapplicable where the doctor was a "manufactured witness" for the state. However, we need not address this issue because unlike Butcher, in this case, the state produced independent, non-hearsay testimony at trial about the cause of R.R.'s injury and the identity of the perpetrator. Therefore, even if the statements made to Inbody were inadmissible, Alvarado was not prejudiced.
 {¶ 22} Inbody testified that her task in examining R.R. was to make an assessment and collect evidence. (Trial Tr., at 217). Inbody did not explain whether the "evidence" she collected was meant to assist the doctor in making a diagnosis or whether the "evidence" was collected to assist the state in obtaining a *Page 17 
conviction. Regardless of the intent behind the "evidence" collection, Schlievert was able to diagnose a perianal laceration caused by penetration without the background information R.R. provided to Inbody, and he testified as such. (Trial Tr., at 281). Schlievert testified that he detected the laceration on the photographs from the January 16, 2007 examination. (Id. at 276). He stated that the laceration was not evident on the pictures taken on January 13 because children in pain refuse to relax their sphincter muscle, and without R.R. relaxing his sphincter, it was impossible to get a photograph of the area where the laceration was found. (Id. at 276-278). Schlievert testified that an equivalent injury anywhere else on the body would have required stitches to heal, and that a perianal laceration could not result from constipation or a fall on the playground. (Id. at 279-281). Considering Schlievert's testimony, the exclusion of Inbody's testimony regarding R.R.'s statements to her would not have changed the outcome of the trial. Likewise, Inbody's testimony identifying Alvarado through R.R.'s statements would not have changed the outcome of the trial because R.R. later testified and identified Alvarado to the jury. On this record, we cannot find plain error. The second assignment of error is overruled.
 Sufficiency of the Evidence {¶ 23} In the third assignment of error, Alvarado challenges his convictions based on the sufficiency of the evidence and the manifest weight of the evidence. *Page 18 
Sufficiency of the evidence is a test of adequacy, used to "`determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, quoting Black's Law Dictionary (6 Ed. 1990) 1433; citing Crim. R. 29(A); State v.Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148. A conviction based on insufficient evidence constitutes a denial of due process, and the defendant may not be recharged for the offense. Id. at 386-387, citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211,72 L.Ed.2d 652, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560. In reviewing a claim under the sufficiency of the evidence standard, an appellate court must determine "`whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Bridge, 3d Dist. No. 1-06-30, 2007-Ohio-1764, quoting State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668.
 {¶ 24} The Ohio Supreme Court has stated that a failure to timely file a Crim. R. 29(A) motion for acquittal during a jury trial does not waive the defendant's right to assign as error the sufficiency of the evidence. State v. *Page 19 Mossburg, 3d Dist. No. 15-06-10, 2007-Ohio-3343, at ¶ 35, citingState v. Jones, 91 Ohio St.3d 335, 346, 2001-Ohio-57, 744 N.E.2d 1163;State v. Carter, 64 Ohio St.3d 218, 223, 1992-Ohio-127, 594 N.E.2d 595. Since a conviction based on insufficient evidence is a denial of due process, the conviction would "almost always" constitute plain error.Mossburg, at ¶ 35, quoting State v. Coe, 153 Ohio App.3d 44,2003-Ohio-2732, 790 N.E.2d 1222, at ¶ 19. Although Alvarado's trial counsel made a Crim. R. 29 motion at the end of the state's case in chief, he failed to renew the motion at the conclusion of all of the evidence. As such, Alvarado has waived all error except plain error as to the sufficiency of the evidence.
 {¶ 25} Alvarado was charged with rape, a violation of R.C. 2907.02(A)(1)(b) and (A)(2), which states:
 No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * * The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 * * *
 No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
 (B) Whoever violates this section is guilty of rape, a felony of the first degree. * * *. [I]f the offender during or immediately after the commission of the offense caused serious physical harm to the victim, or if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section *Page 20 2971.03 of the Revised Code, the court may impose upon the offender a term of life without parole.
"Sexual conduct" is defined as, "anal intercourse * * * between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the * * * anal opening of another. Penetration, however slight, is sufficient to complete * * * anal intercourse." R.C. 2907.01(A).
 {¶ 26} R.R. testified that he was born in April 1998; that Alavarado put his "P" all the way into his "butt;" and that Alvarado had previously choked him. Several witnesses testified that R.R. was unable to sit normally and that he displayed discomfort when he moved around on January 12 and 13, 2007. Schlievert testified about the perianal laceration suffered by R.R., and indicated that an injury of that severity on any other body part would have required stitches. This testimony is sufficient to support a conviction for rape under R.C. 2907.02(A)(1)(b) and (A)(2), as well as the specifications that R.R. was under the age of 10 at the time of the offense; that Alvarado used force or the threat of force; and that the victim suffered serious physical harm. Accordingly, we are unable to find plain error in the conviction. *Page 21 
 Manifest Weight of the Evidence {¶ 27} Unlike sufficiency of the evidence, a challenge based on the manifest weight of the evidence requires the court to sit "as a `thirteenth juror.'" Thompkins, 78 Ohio St.3d at 387, quotingTibbs, 457 U.S. at 42.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
(Emphasis added.). Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990), at 1594. When an appellant challenges a conviction based on the weight of the evidence, the court must review the entire record, weigh the evidence and "all reasonable inferences," consider witness credibility, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. To reverse a conviction based on the manifest weight of the evidence, a unanimous panel of three appellate judges must concur. State v. Michaels, 3d Dist. No. 13-99-41, 1999-Ohio-958, citing Thompkins, at 389.
 {¶ 28} At trial, Alvarado produced testimony from nine witnesses, including himself. Dr. Ralph Lion, testified that R.R. visited a hospital emergency *Page 22 
room on February 12, 2007 due to fecal impaction. (Trial Tr., at 459-460). On cross-examination, the doctor indicated that he was unable to assess the cause of the diagnosis. (Id. at 461).
 {¶ 29} Multiple witnesses testified that R.R. called Alvarado "Dad" and that they got along well. Several witnesses also testified that on January 12, 2007, R.R. seemed happy, he ran, yelled, jumped, and walked normally.
 {¶ 30} Lorenzo Ayala testified that he was with R.R. in the hospital on January 13 and January 16, 2007. Lorenzo stated Schlievert told him and Christina that R.R. had a small tear around his anus, which could have been caused by constipation, and that there had been no rape. (Id. at 487).
 {¶ 31} Cassandra Sanchez testified that she never told R.R. he would live with his biological father if Alvarado were sent to prison. She also claimed that R.R. still talks to her about the rape and cries. (Id. at 509). Cassandra indicated that R.R.'s story has been consistent every time he has talked to her. (Id.).
 {¶ 32} I.A., Alvarado's minor daughter, was in the same grade as R.R. She testified that R.R. "fell on his butt" and hurt himself during recess on January 12, 2007. (Id. at 523; 531). I.A. told the jury that she overheard Cassandra telling R.R. that if he had Alvarado sent to prison, R.R. would be able to live with his biological father. (Id. at 525). On cross-examination, I.A. testified that R.R. fell *Page 23 
on the playground during the spring or the fall, and that Christina, R.R.'s mother, told her what to say and told her that Alvarado would go to jail. (Id. at 532; 534).
 {¶ 33} Christina Sanchez testified that Lorenzo took her home from the hospital in Toledo on the night of January 12, 2007. R.R. was in the backseat of the car and did not show any signs of pain or discomfort. (Id. at 548). Christina told the jury that R.R. gets constipated and has difficulty wiping his buttocks after a bowel movement. She stated that it was not uncommon for R.R. to get "poop" stuck on his underwear, which would cause him pain and result in difficulty walking. (Id. at 550-552). Christina indicated that on January 13, 2007, R.R. was playing with Schwiebert at the hospital and fell on his "butt," but he was not in pain after the fall. Christina testified that Schlievert told her and Lorenzo that R.R. had no reason to be at the hospital because he had only a small tear on his anus, which could have been caused by constipation. (Id. at 554). Finally, Christina testified that R.R. was a manipulative child, and that he "put on a show" for Inbody. (Id. at 580; 595-596).
 {¶ 34} Finally, Alvarado testified on his own behalf, denying the allegations lodged against him. Alvarado provided the following explanation to the jury as to why his semen was found on one of R.R.'s t-shirts.
 So I went to the bathroom because I got — how am I going to put it — horny. I was horny because I ain't had sex in about two weeks. I went to the bathroom and I masturbated. *Page 24 
 I had my, I masturbated over the toilet, the toilet was in front of me, I masturbated, the semen fell into the toilet. I finished shaking my privates to make sure I was dry, and then I went over to the paper towels, just to make sure, like when you pee, there's always a little wet spot. Then I turned around to flush the toilet, and then while I was turning to flush the toilet, somehow I got aroused and I started shooting, going more, shooting more sperm, and the nearest thing to me was the kids' clothes because they had just gotten done taking a shower and they hadn't taken it out of the restroom. And instead of it falling on the floor or me trying to catch it with my hand, I hurried and grabbed a piece of clothing and wrapped it around my private and had the semen drop in there.
(Id. at 617-618). Alvarado stated that R.R. acted normal on the morning of January 13, 2007. On cross-examination, Alvarado told the jury about several statements he made to Schwiebert that had been redacted from the video-taped interview. When the state produced the transcript of the interview, it clearly showed that Alvarado had not made the claimed statements. Alvarado then stated that he must have just thought those statements to himself.
 {¶ 35} On this record, the evidence supported the conviction. The state presented evidence in its case in chief to prove each element of the offense. During the defendant's case in chief, witnesses testified that R.R. was acting normal on January 12 and 13, 2007, but some of those same witnesses later testified about R.R.'s lactose intolerance and his difficulties with constipation. The multiple defense theories, ranging from denials that R.R. was in pain to explanations of why R.R. was in pain, resulted in inconsistent and confusing *Page 25 
testimony for the jury. The jury was faced with the task of assessing credibility and apparently believed the state's witnesses. We may not substitute our judgment for the jury's since its members observed the witnesses' demeanors during trial. State v. DeHass,10 Ohio St. 2d at 231. The third assignment of error is overruled.
 Ineffective Assistance of Trial Counsel {¶ 36} In the fourth assignment of error, Alvarado contends that individual errors made by his attorney would not be sufficient to prove his ineffectiveness; however, the cumulative effect would be. Alvarado claims that trial counsel subpoenaed the wrong witness; had no witness to rebut Schlievert's testimony concerning the perianal laceration and causation; performed an inadequate cross-examination of Schlievert; stipulated to Cox's and Inbody's credentials; allowed hearsay testimony without objection; and stipulated to a prior report of domestic violence. The state argues that counsel's "errors" were sound trial strategy, and that Alvarado has failed to show that trial counsel did not contact expert witnesses or adequately prepare for cross-examination.
 {¶ 37} To establish ineffective assistance of counsel, a defendant must show that "(1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense." State v. Price, 3d Dist. No. 13-05-03, 2006-Ohio-4192, at ¶ 6, citing State v. Kole, *Page 26 92 Ohio St.3d 303, 306, 2001-Ohio-191, 750 N.E.2d 148, quoting Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In proving that the defendant was prejudiced by counsel's actions, the appellant must demonstrate that "there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different." Id. at ¶ 6, citing Strickland, at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." State v.Loza (1994), 71 Ohio St.3d 61, 83, 641 N.E .2d 1082, citingStrickland, at 697.
 {¶ 38} To prove that an attorney's conduct was deficient or unreasonable, the appellant "must overcome the presumption that the attorney provided competent representation, and show that the attorney's actions were not trial strategies prompted by `reasonable professional judgment.'" State v. Scott-Hoover, 3d Dist. No. 3-03-20, 2004-Ohio-97, at ¶ 7, quoting Strickland, at 687. Attorneys licensed in Ohio enjoy a strong presumption of competence, and "tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance." Id., citing State v. Sallie, 81 Ohio St.3d 673,675, 1998-Ohio-343, 693 N.E.2d 267; State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 965. "Instead, the errors complained of must amount to a substantial violation of defense counsel's essential duties to his client." Id., *Page 27 
citing State v. Bradley (1989), 42 Ohio St.3d 136, 141, 538 N.E.2d 373, quoting State v. Lytle (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623.
 {¶ 39} On this record, we cannot hold that trial counsel was ineffective. First, the record does not clearly show that trial counsel subpoenaed the "wrong" witness. Counsel called Dr. Ralph Lion to testify about R.R.'s visit to the emergency room in Tiffin, Ohio on February 12, 2007, approximately one month after the rape. Although, Lion did not examine R.R., he was the supervising physician that evening, and he signed all of R.R.'s paperwork. Despite Alvarado's contention that Lion was the "wrong" witness, he does not indicate how the examining doctor would have testified differently. Lion's testimony was that R.R. visited the emergency room and was diagnosed with a fecal impaction. Alvarado has not explained why the examining doctor's testimony was crucial to his case, and if the doctor were to testify that R.R. suffered from a fecal impaction on February 12, 2007, the testimony would be cumulative to all of the witnesses who testified that R.R. had trouble with constipation. Counsel's decision to subpoena Lion is not outside the realm of his "reasonable professional judgment." See generally State v.Lawhorn, 3d Dist. Nos. 11-04-19, 11-04-20, 2005-Ohio-2776.
 {¶ 40} Second, Alvarado claims trial counsel was deficient for failing to call an expert witness concerning the cause of R.R.'s perianal laceration. However, the decision to consult an expert witness is "`well within the standard of *Page 28 
reasonable trial tactics.'" In re D.D., 8th Dist. No. 89042, 2008-Ohio-222, citing State v. Day, 8th Dist. No. 79368, 2002-Ohio-669. Furthermore, defense counsel thoroughly cross-examined Schlievert, and Alvarado has not demonstrated a reasonable probability that but for trial counsel's failure to obtain an expert witness, the outcome of his trial would have been any different. See State v. Young, 3d Dist. No. 4-01-18, 2002-Ohio-406; State v.Thompson (1987), 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407.
 {¶ 41} Third, Alvarado challenges trial counsel's stipulations to Cox's and Inbody's credentials. Alvarado's attorney is an experienced criminal defense attorney and is familiar with many of the state's expert witnesses. Furthermore, Alvarado has not demonstrated any deficiencies in either witnesses' qualifications. The state laid a foundation for each witness, and counsel's decision to stipulate to those qualifications is a matter of trial strategy. A "defense attorney is not required to raise meritless issues." State v. Goodwin (Apr. 17, 1997), 8th Dist. No. 98531, citing State v. Hill (1996),75 Ohio St.3d 195, 661 N.E.2d 1068. There is nothing in the record demonstrating any deficiency in the witnesses' qualifications, and there is nothing in the record to suggest that counsel's stipulations were anything other than sound trial strategy. Goodwin.
 {¶ 42} Fourth, Alvarado contends that trial counsel failed to object to various instances of hearsay and stipulated to the admission of a prior police report *Page 29 
concerning domestic violence. In regard to the police report, Alvarado suffered no prejudice as a result of trial counsel stipulating to its admissibility. On direct examination, Christina told the jury that Alvarado had never physically abused any of his children. On cross-examination, the state asked her if she recalled making a written statement to police regarding Alvarado's physical abuse of one of his daughters. (Trial Tr., at 558). When Christina denied making the statement, the state sought to introduce the police report into evidence. (Id. at 559). The report was marked as State's Exhibit 17. Upon objection of defense counsel, the court removed the jury from the courtroom. Counsels' arguments concerning the report resulted in defense counsel stipulating to the use of the report, but not the accompanying photographs. The exhibit was never admitted into evidence by the trial court, and the state never used the exhibit. When the state resumed its cross-examination of Christina, she changed her answer and "remembered" making a written statement to police about Alvarado hitting his daughter with a belt. (Id. at 564-565). The state never used the exhibit during cross-examination, and the jury never saw it. On this record, Alvarado suffered no prejudice due to counsel's stipulation.
 {¶ 43} Likewise, the defendant has suffered no prejudice due to counsel's failure to object to hearsay statements. Alvarado's brief fails to indicate specific instances of hearsay; however, we have already addressed several instances of *Page 30 
hearsay in our discussion of the second assignment of error and have determined that Alvarado was not prejudiced. Accordingly, Alvarado was not denied the effective assistance of counsel, and his fourth assignment of error is overruled.
 Sentencing {¶ 44} In the fifth assignment of error, Alvarado contends that the trial court erred by failing to consider the recidivism and seriousness factors set forth in R.C. 2929.11 and 2929.12 prior to sentencing. Alvarado also claims that the trial court "punished" him for maintaining his innocence. In response, the state argues that the trial court's sentence of life imprisonment was justified based on a prior domestic violence conviction and the mental and physical trauma sustained by R.R. The state contends that the court has discretion in sentencing a rapist to life in prison.
 {¶ 45} Since the offense occurred on January 12, 2007, we must apply the statutes in effect on that date. R.C. 2907.02(B) provided in pertinent part:
 Whoever violates this section is guilty of rape, a felony of the first degree. ** * Except as otherwise provided in this division, notwithstanding sections 2929.11 to 2929.14 of the Revised Code, an offender under division (A)(1)(b) of this section * * * shall be sentenced to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code. * * * if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, * * * or if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the *Page 31 Revised Code, the court may impose upon the offender a term of life without parole.
(Emphasis added). The statute clearly grants discretion to trial courts in determining whether to impose life without parole. The statute is also clear that trial courts need not consider R.C. 2929.11 or 2929.12
when the offender is convicted under R.C. 2907.02(A)(1)(b).
 {¶ 46} However, even if the court was required to consider R.C. 2929.11 and 2929.12 prior to imposing a life sentence without parole, the court did consider those statutes as they relate to the overriding principles and purposes of felony sentencing and the relevant recidivism and seriousness factors. In its judgment entry, the court indicated that it had considered "the record, oral statements, any victim impact statements, and pre-sentence investigation report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11." (J. Entry, Nov. 1, 2007).
 {¶ 47} This Court has previously held that a trial court "is not required to use specific language regarding its consideration of the seriousness and recidivism factors. State v. Glenn, 3d Dist. No. 1-06-12, 2008-Ohio-3058, at ¶ 39, citing State v. Smith, 3d Dist. No. 2-06-37, 2007-Ohio-3129 at ¶ 26, citing State v. Sharp 10th Dist. No. 05AP-809, 2006-Ohio-3448; State v. Arnett, 88 Ohio St.3d 208, 205,2000-Ohio-302, 724 N.E.2d 793; State v. McAdams, 162 Ohio App.3d 318,2005-Ohio-3895, 833 N.E.2d 373; and State v. Patterson, 8th Dist. No. 84803, *Page 32 2005-Ohio-2003. There is also no requirement that the trial court discuss the factors on the record or even indicate that the judge has considered the factors. Id., citing State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1, citing State v. Polick (1995),101 Ohio App.3d 428, 431, 655 N.E.2d 820; State v. Gant, 7th Dist. No. 04-MA-252,2006-Ohio-1469 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings); State v. Hughes 6th Dist. No. WD-05-024, 2005-Ohio-6405. However, based on the following statements of the trial court, it is clear that the court did consider the factors of R.C. 2929.12.
 * * * first of all, concerning your other children, Mr. Alvarado, it's my conclusion is that they'll be better off without you being in the home. My conclusion concerning the facts of this case are the same as the jury's, that you're not only a rapist, but you're also a liar.
 My conclusion is that not only were you guilty of the rape, but also guilty of specifications as found by the jury. The specifications being that the victim was less than the age of ten, that you purposely compelled the victim to submit by force or threat of force, and that you caused serious physical harm to the victim. That, coupled with your continued denial of guilty, leads me to the conclusion that there are no mitigating circumstances surrounding your conviction or the issues of sentencing today.
 It is clear to me, contrary to what has been stated here by Christina, that you are not innocent. There is no doubt in my mind concerning what happened. The continued suggestion that nothing happened continues to appall the Court.
 The facts of this case are just that, they're appalling. The subsequent events, including the mother's reaction in this case, *Page 33 is similarly appalling to the Court, and the position that that placed the victim in this case.
(Sentencing Hearing Tr., Jan. 11, 2008, at 21-22). While Alvarado contends that the trial court punished him for maintaining his innocence, that is not the case. At the sentencing hearing, both Christina and Alvarado made lengthy, rambling statements about his innocence. While the trial court mentioned Alvarado's denial of guilt, it is clear that the court was considering Alvarado's lack of remorse, a mitigating factor to be considered by the court under R.C. 2929.12. See generally State v. Dawson, 2d Dist. No. 21768, 2007-Ohio-5172, at ¶ 21;State v. Russell, 8th Dist. No. 88008, 2007-Ohio-2108, at ¶ 23. Accordingly, the fifth assignment of error is overruled.
 {¶ 48} The judgment of the Putnam County Common Pleas Court is affirmed.
Judgment Affirmed
 SHAW, P.J., and PRESTON, J., concur.
[1] R.R. is Christina's son. *Page 1