[Cite as *State v. Butler*, 2012-Ohio-5022.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO.  4-11-13

      v.

THOMAS L. BUTLER,                  **O P I N I O N**

      DEFENDANT-APPELLANT.

Appeal from Defiance County Common Pleas Court
Trial Court No. 10 CR 10724

**Judgment Reversed and Cause Remanded**

Date of Decision:   October 29, 2012

APPEARANCES:

    *Terice A. Warncke*  for Appellant

    *Morris J. Murray and Russell R. Herman*  for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Thomas L. Butler ("Butler") brings this appeal from the judgment of the Court of Common Pleas of Defiance County finding him guilty of four counts of sexual battery and sentencing him to a total of sixteen years in prison. For the reasons set forth below, the judgment is reversed.

{¶2} ALC was born on October 15, 1981, to her biological mother CJW. When ALC was around five years old, she was removed from the home and placed in foster care. Eventually, CJW's parental rights were legally terminated and ALC was adopted by a new family. Due to abuse in the adoptive home, ALC was returned to the custody of the State. As part of her caseplan, she was permitted to visit with her biological mother, whose parental rights to ALC had been previously legally terminated. CJW was then married to Butler.

{¶3} ALC had frequent scheduled visits with CJW. However, she also took it upon herself to arrange unscheduled visits to CJW's home, frequently when CJW was not home and only Butler was present.[1] Eventually, her relationship with Butler became sexual. Once she turned eighteen, ALC moved into the home with Butler and CJW. Butler provided ALC with marijuana. He also gave her money for a tongue piercing and signed the parental consent form. CJW joined in

---

[1] ALC's foster parents were unaware that ALC was at CJW's home, instead thinking she was with friends after school.

the sexual activities with Butler and ALC. In time, Butler and CJW separated and ALC no longer lived with him.

{¶4} Several years later, Lieutenant Cliff Vandermark ("Vandermark") was investigating an unrelated claim of sexual molestation. Vandermark learned then of the relationship between Butler and ALC back in the late 1990's. When questioned by Vandermark, Butler admitted to the sexual relationship.

{¶5} In January of 2010, the Defiance County Grand Jury indicted Butler on one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, and four counts of sexual battery in violation of R.C. 2907.03(A)(5), felonies of the third degree. All of the offenses were alleged to have occurred between November 1, 1997 and October 14, 1999. Butler entered pleas of not guilty to all of the charges. A jury trial was held on August 23-24, 2010. At the conclusion of the trial, the jury was unable to reach a verdict as to the rape charge, but found Butler guilty of the remaining four sexual battery charges. On September 7, 2010, Butler was sentenced to four years in prison on each charge with the sentences to be served consecutively for a total prison sentence of sixteen years. Butler appeals from this judgment and raises the following assignments of error.

**First Assignment of Error**

**[Butler] was denied his constitutionally guaranteed right to effective assistance of counsel.**

**Second Assignment of Error**

**The trial court committed reversible error by overruling [Butler's] motion for acquittal after the State's case in chief because [Butler] was not in loco parentis under *State v. Noggle*, and the indictment was insufficient as a matter of law regarding the status of in loco parentis.**

**Third Assignment of Error**

**The trial court committed reversible error by instructing the jury that it was not necessary for the State to prove the exact dates of the offenses but merely a date reasonably near the date claimed and by failing to provide an adequate instruction of the meaning of in loco parentis under *Noggle*.**

**Fourth Assignment of Error**

**The State failed to provide sufficient evidence to sustain the convictions against [Butler].**

**Fifth Assignment of Error**

**The verdicts in this case were against the manifest weight of the evidence and should be reversed.**

**Sixth Assignment of Error**

**[Butler] was sentenced contrary to law because the seriousness factor considered by the court was already inherent in the subsection of the statute of which he was convicted.**

In the interest of clarity, the assignments of error will be addressed out of order.

{¶6} In the second assignment of error, Butler claims that the trial court erred in denying his motion for acquittal pursuant to Criminal Rule 29 because there was insufficient evidence to prove that he was acting *in loco parentis*. He

-4-

also claims that there were issues with the language of the indictment. When determining whether there is sufficient evidence to support a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 (1991), ¶ 2 of the syllabus.

{¶7} The Ohio Supreme Court has previously defined *in loco parentis* as "a person who has assumed the dominant parental role and is relied upon by the child for support." *State v. Noggle*, 67 Ohio St.3d 31 (1993). The court went further and added that the person would have "assumed the same duties as a guardian or custodian, only not through a legal proceeding." *Id.* at 33.

{¶8} This court has recently addressed what is necessary for a person to be acting *in loco parentis*.

> **Whether a person stands in loco parentis to a child is a question of fact. State v. Caton, 137 Ohio App.3d 742, 750, 739 N.E.2d 1176 (1st Dist.2000). "It is well settled that an appellate court will not reverse a trial court's finding of fact based on insufficient evidence where the finding is supported by some competent, credible evidence." Id. The evidence must be viewed "in the light most favorable to the prosecution." Id., citing State v. Martin, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).**

> **According to the Supreme Court of Ohio, in loco parentis means " 'charged, factitiously, with a parent's rights, duties, and responsibilities.' " Noggle, at 33, 615 N.E.2d 1040, quoting Black's Law Dictionary 787 (6 Ed.1990). As previously stated, a person stands in loco parentis to a child when he "has assumed**

> **the dominant parental role and is relied upon by the child for support.**" Id. The term applies to a person who has "**put himself in the situation of a lawful parent assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption.**" *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 736, 680 N.E.2d 161 (10th Dist.1996).

*State v. Knepley*, 3d Dist. No. 7-11-02, 2012-Ohio-406, ¶ 15-16. In *Knepley*, the evidence showed that Knepley lived with the child's mother, he put the child to bed by rocking her to sleep, provided financial support, and fed the child. Knepley had been seen to make the child bottles, change her diapers, and care for her when she was ill. Knepley even prevented the biological father from visiting with the child. Based upon this evidence, the trial court and this court concluded that Knepley had provided financial support and physical care for the child and was thus acting *in loco parentis*

{¶9} Here, evidence was provided that Butler on a couple of occasions cooked food while she was there and she ate. Butler also gave ALC some money. He also signed a permission slip for her to get her tongue pierced. However, ALC testified that Butler provided her with marijuana and many of the things given to her by Butler were given in an effort to persuade her to engage in sexual activities with him. CJW testified that ALC told her Butler was bribing her to engage in sexual intercourse with him. This type of "support" was *de minimus* in nature and was less support than bribery. At that time, there was no legal relationship

between any of the parties. ALC was in the custody of the State and it was responsible for her support. ALC admitted that she was at Butler's home without the knowledge or permission of her foster parents most of the time. The visits with CJW were limited at the beginning and after it was learned that Butler provided ALC with marijuana, they were supervised. Unlike the defendant in *Knepley*, Butler was not acting like a parent. Providing bribes of drugs and cash in exchange for sex is not acting like a parent, but rather is the exact opposite of how a parent should be acting. Butler was not responsible for the care or well-being of ALC. He did not "put himself in the situation of a lawful parent assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption**."** *Knepley*, at ¶16. ALC was not relying upon Butler for support. Thus, the evidence does not support a finding that Butler was acting *in loco parentis* at the time he engaged in sexual conduct with a minor.[2] Having found that the evidence was insufficient to support a conviction for acting *in loco parentis*, this court need not address the argument concerning the language of the indictment. The second assignment of error is sustained.

---

[2] The dissent claims that the evidence was sufficient based upon the fact that ALC was at Butler's home when he was home alone and that she is the biological daughter of Butler's wife at that time. However, the wife's parental rights had been terminated and ALC was adopted by another family. Thus at that time, there was no legal relationship between ALC and the wife. They were legal strangers under the law. Additionally, ALC may have been at the home, but the testimony was that she there without either the permission or the knowledge of her foster parents. She had told them she was going to the home of various friends and was sneaking over to Butler's home.

Case No. 4-11-13

{¶10} The fourth assignment of error is similar to the second in that it argues that the evidence was insufficient to prove that Butler committed the sexual battery while acting *in loco parentis*.

> **Sufficiency of the evidence is a test of adequacy used to "determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." \* \* \* A conviction based on insufficient evidence constitutes a denial of due process, and the defendant may not be recharged for the offense. \* \* \* In reviewing a claim under the sufficiency of the evidence standard, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." \* \* \***

*State v. Alvarado*, 3d Dist. No. 12-07-14, 2008-Ohio-4411, ¶23 (citations omitted). For the reasons set forth above in the analysis of the second assignment of error, the fourth assignment of error is sustained.

{¶11} Having found error prejudicial to Butler in the second and fourth assignments of error, the remaining assignments of error are moot and need not be addressed.

{¶12} The judgment of the Court of Common Pleas of Defiance County is reversed and the matter is remanded for further proceedings consistent with this opinion.

*Judgment Reversed and
Cause Remanded*

**ROGERS, J., concurs.**
/jlr

**PRESTON, J., Dissents.**

{¶13} Since the majority opinion minimizes the evidence presented at trial, I must respectfully dissent.

{¶14} In his second and fourth assignments of error, Butler argues that the State failed to present sufficient evidence demonstrating he was a "person in loco parentis," as required under R.C. 2907.03(A)(5). Viewing the evidence in a light most favorable to the prosecution, I would conclude that the State presented sufficient evidence on this element.

{¶15} When determining whether a person is acting in loco parentis, an appellate court should consider the following factors:

(1) the person is charged with a parent's rights and responsibilities;

(2) the person has assumed the same duties as a guardian or custodian; (3) the person has assumed a dominant parental role; (4) the child relies upon the person for support; (5) the child "goes home" to the person; (6) the person's relationship with the child is close, supportive, and protective; (7) the person has the intention of acting as a parent, which is shown by the acts, conduct, and declaration of the person; (8) the person intentionally assumes the obligations incidental to the parental relationship; and (9) the person

is the primary caretaker for the child while the biological parent is absent due to, for example, employment

*State v. Abubakar*, 10th Dist. No. 11AP-440, 2011-Ohio-6299, ¶ 13.

{¶18} Butler was married to and living with the victim's biological mother. (Aug. 23, 2010 Tr. at 153). The victim testified that she considered Butler to be her "stepdad." (*Id*. at 154). The victim was at Butler's home three days during the school week, often leaving directly from school to come to Butler's home, and, about a month or two after reconnecting with her biological mother, she slept over at the residence on weekends while exercising visitation with her biological mother. (*Id*. at 155, 168, 171). The victim testified that Butler gave her "material possessions, money" while she was in the residence, and that Butler paid to have her tongue pierced. (*Id*. at 162). Both the victim and her biological mother indicated that Butler signed the parental consent forms for the victim to get her tongue pierced. (*Id*. at 163, 207). The victim further testified that, while she was at Butler's home, he provided her food, gave her money, and supported her. (*Id*. at 170). After she was 18, the victim moved into the home with Butler and her biological mother. (*Id*. at 159).

{¶19} The majority seizes upon the victim and her biological mother's characterization of the money given to the victim as "bribes" for having sex to conclude that Butler was not financially supporting the victim. Majority Op. at ¶

9. Aside from the fact that financial support is but one of many factors to consider in determining whether a person is in loco parentis, the majority fails to recognize that the jury could classify the money given to the victim as more than mere bribery[3] and fails to recognize the victim's subsequent testimony that Butler was supporting her, not to mention the fact that the victim was in Butler's home three days per week and on the weekends. *State v. Funk*, 10th Dist. No. OSAP-230, 2006-Ohio-2068, ¶ 70; *Abubakar*, 2011-Ohio-6299, at ¶ 10 ("* * * the element of financial support implied in the *Noggle* syllabus is not solely determinative of a person's status as in loco parentis. A close, supportive, and protective in loco parentis relationship need not include provision for the material needs of the child."). The jury could have also concluded that Butler was assuming the obligations incidental to the parental relationship when he signed the parental consent forms for the victim to get her tongue pierced. There was also testimony that the victim was under Butler's care/supervision while the biological mother was working. Finally, a reasonable juror could infer that Butler was assuming parental obligations given the significant amount of time that the victim spent with Butler, and because the victim moved in with him after she turned 18. This is especially true in light of the fact that Butler was married to the victim's biological mother, and the victim wanted to reestablish a relationship with her biological

---

[3] In fact, it seems completely reasonable for a rational juror to conclude that the victim and the mother's after-the-fact classification of the money as "bribes" was their effort to diminish their own moral or criminal culpability in the various debaucheries that occurred, as the case may be.

mother. Common sense dictates that Butler was involved in parenting the victim, and the victim even testified that she considered Butler as her stepdad.

{¶20} In a footnote, the majority explains that, at the time the victim was visiting Butler, "there was no legal relationship between [the victim] and [Butler's] wife. They were legal strangers under the law." Whether the victim was a "legal stranger" to her biological mother is irrelevant; it is the relationship between Butler and the victim that is dispositive herein. Furthermore, the majority's observation concerning the lack of any legal relationship between the victim and Butler highlights the very reason that the State prosecuted this case under an in loco parentis theory, since Butler "assumed the same duties as a guardian or custodian, *only not through a legal proceeding*." *Noggle*, 67 Ohio St.3d at 33 (Emphasis added). *See also Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 736 (10th Dist.1996) ("a person standing in loco parentis to a child is one who had put himself in the situation of a lawful parent assuming the obligations incident to the parental relation, *without going through the formalities necessary to a legal adoption*.") (Emphasis added). I also find the foster parents' knowledge that the victim was visiting Butler or their permission to do so irrelevant to whether Butler stood in loco parentis.

{¶21} Viewing the evidence in a light most favorable to the State, I would find sufficient evidence that Butler was a person in loco parentis under R.C.

2907.03(A)(5). For these reasons, I would overrule Butler's second and fourth assignments of error and proceed to discuss his remaining assignments of error. Therefore, I dissent.

/jlr